NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-529

BILLY W. CARTER, ET UX.

VERSUS

GREGORY LOYD, ET AL.

**********
APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 18,284
HONORABLE ALAN A. KRAKE, PRESIDING
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Oswald A. Decuir, Judges.

AFFIRMED.

William M. Ford
P.O. Box 12424
Alexandria, LA 71315-2424
(318) 442-8899
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Billy W. Carter, et ux.

Edward Larvadain, Jr.
626 Eighth Street
Alexandria, LA 71301
(318) 445-6717
COUNSEL FOR DEFENDANTS-APPELLEES:
    Gregory Loyd, et al.

**COOKS, Judge.**

This appeal involves a suit for damages arising out of a motor vehicle accident occurring in the early morning hours of November 18, 2005. At approximately 4:30 a.m. on that date, Plaintiff, Billy W. Carter, was driving his vehicle on Louisiana Highway 492 in Grant Parish, Louisiana. As he was driving in the darkness, Plaintiff alleges he suddenly saw two horses, each occupying one of the lanes of travel. To avoid hitting the horses, Plaintiff immediately swerved his vehicle to the left, causing it to leave the roadway and overturn in a ditch. The vehicle did not strike either horse and there were no witnesses. Plaintiff was pinned in his vehicle and was not freed until approximately thirty minutes after the occurrence of the accident when he was cut out of the vehicle by first responders.

Plaintiff, who already suffered from a serious heart condition, suffered severe bruising and a brain concussion as a result of the accident. He also suffered pain in his neck and back, as well as serious nerve damage to his left shoulder and arm. As a result of the nerve damage, Plaintiff alleged he lost use of his left arm and was thereby rendered totally and permanently disabled.

Plaintiff stated he was traveling at approximately 45 miles per hour at the time of the accident. He noted it was a clear night and his headlights were operating properly. He testified in his deposition that he was approximately eight feet away from the horses when he first noticed them. At trial, Plaintiff stated he was approximately six car lengths, or 120 feet away when he first noticed the horses. Plaintiff alleged the accident was caused by the fault of Gregory Loyd, who was keeping the two horses in a pasture on the premises of Inez Spurlock. Both Loyd and Spurlock were named as Defendants. According to Plaintiff, the "entire community knew that [Loyd] kept his horses there and that the fencing of the pasture was very

shoddy allowing the horses apparently to leave almost at will. This was known of course to Mrs. Spurlock who rented the pasture as well as to Mr. Loyd who allowed his horses to stray from that inadequate facility onto a public road."

Defendants did not concede that the accident was caused by the presence of two horses, and further maintained, even if there were two horses in the roadway, they were not horses owned by or stored by Defendants. Defendants noted there were dozens of horses in the area as well as several different farms and/or owners.

After trial on the merits, the judge issued written reasons finding in favor of Defendants:

> During trial, the court heard plaintiff's testimony and believed that there certainly were two horses in the road and that but-for these two horses standing in the middle of the road, Mr. Carter would not have swerved and wrecked his vehicle. However, the identification of the particular horses and the respective owner(s) of said horses is problematic in this case.
>
> There is no doubt that horse owners have a duty to keep their horses from traversing public roadways (*see* [La.R.S.] 3:2803). The presence of any horses in the middle of Highway 492 on the morning of November 18, 2005 would certainly constitute a breach of that duty. However, without a positive identification of the horses involved, there is no way to prove ownership of the horses and no justification for apportioning fault among these particular defendants. Further testimony revealed that a large quantity of horses are regularly housed in the vicinity of this particular stretch on Highway 492, so evidence that two particular horses found in a nearby pasture sometime after the accident does not prove that these two horses were the cause of the accident or were even the same two horses standing in the middle of Highway 492 approximately four hours earlier.
>
> The case law cited by plaintiff cannot be used by the court in this particular case because the cases cited involve cows or other such animals that were *struck* on the highway. Fortunate for the horses involved but unfortunate for the plaintiff, without tangible evidence such as an injured animal or a concrete witness to the accident, the court cannot definitively determine the identity of the horses, and consequently, the owners who should be held liable in negligence.
>
> While it is most unfortunate that Mr. Carter has suffered injuries in this accident, the court cannot lay fault on these particular defendants absent the positive identification of the horses involved and the

respective owners.

For the reasons stated above, the trial court issued judgment denying Plaintiff's petition for damages. This appeal followed.

## ANALYSIS

La.R.S. 3:2803 provides that no person owning livestock shall knowingly, willfully, or negligently permit his livestock to go at large upon certain public highways, which highways are specifically listed in the statute. The jurisprudence interpreting La.R.S. 3:2803 is well settled that when an automobile *strikes* a horse or cow on one of the enumerated "stock law" highways, the burden of proof rests upon the owner of the animal to exculpate himself from negligence. *Schexnider v. Allstate Ins. Co.*, 304 So.2d 825 (La.App. 3 Cir. 1974), *writ denied*, 307 So.2d 639 (La.1975); *Womack v. Rhymes*, 300 So.2d 226 (La.App. 2 Cir. 1974), *writ denied*, 303 So.2d 179 (La.1975). However, as the trial court noted in this case, Plaintiff's vehicle did not strike an animal. Therefore, no burden of proof to exculpate himself ever attached to either Defendant. As the trial court noted, the burden was on the Plaintiff to prove the identity of the horses that allegedly caused the accident and the owners of said horses. The trial court found Plaintiff was unable to meet this burden. After a thorough review of the record, we find no clear error in this conclusion.

Plaintiff argues the trial court erred when it failed to find the two horses which allegedly caused the accident were owned and kept by Defendants. We disagree.

Plaintiff testified at trial that the horses he saw on Highway 492 were reddish in color and had a black mane. However, Reginald Hamilton, who ran out of his house (which was located at the accident scene) less than a minute after the occurrence of the accident, was told by Plaintiff that the color of the horses causing the accident were black. Mr. Hamilton also testified he saw no horses near the

-3-

accident scene. It was not until four or five hours after the accident, when two horses belonging to Mr. Loyd were seen grazing in a nearby pasture. On his way home from the hospital, Plaintiff drove to the pasture and identified the two horses as the ones that were present in the highway. Although Plaintiff testified he was familiar with Mr. Loyd's horses, he did not tell Mr. Hamilton at the accident scene that the horses on the road were owned by Mr. Loyd.

There was testimony from several witnesses that numerous horses, owned by multiple people, were located near the area of the accident. Mr. Hamilton testified there were "probably 45 horses in that . . . in a less than mile radius" of the accident scene. Other witnesses corroborated the large number of horses that were in the area, and several witnesses commented there had been other instances in the past where vehicles struck livestock on this highway.

After considering the evidence and testimony presented, the trial court concluded Plaintiff failed to meet its burden of proving the identity of the horses, and consequently, the owners who should be held liable in negligence.[1] We cannot say the trial court manifestly erred in his factual conclusions. Therefore, we must affirm its denial of Plaintiff's petition for damages.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED.**

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.**

---

[1] Plaintiff spends much time in his brief arguing whether Mr. Loyd owned the two horses that were found in the pasture some four or five hours after the accident and claimed by Plaintiff to have been the two horses he encountered on the roadway. He notes Mr. Loyd, for the first time at trial attempted to claim he did not own these two horses, but his brother did. This argument is irrelevant, because Plaintiff was unable to establish the identity of the two horses he struck. Therefore, even if ownership of two horses later identified by Plaintiff were found to belong to Mr. Loyd it would not change the outcome of this case.